Gerald LONGEY and Lorraine Longey

v.

**Paul PHILBROOK, Commissioner of the Vermont State Department of Social Welfare, Individually and in his Official Capacity.**

Civ. A. No. 74–43.

United States District Court, D. Vermont.

Sept. 27, 1977.

Zander B. Rubin, Vermont Legal Aid, Inc., St. Johnsbury, Vt., for plaintiffs.

David H. Greenberg, Asst. Atty. Gen., Montpelier, Vt., for defendant.

COFFRIN, District Judge:

This action, instituted pursuant to 42 U.S.C. § 1983,[1] challenges the validity of a Vermont Department of Social Welfare Regulation which renders ineligible for Aid to Needy Families with Children ("ANFC") any family owning more than one automobile. Plaintiffs claim that the regulation constitutes a denial of their constitutional rights to equal protection of the laws and due process of law and violates the federal statutes and regulations governing state plans authorized by Title IV of the Social Security Act of 1935, 42 U.S.C. §§ 601–10, under the federal program of Aid to Families with Dependent Children ("AFDC").

The original complaint in this action was dismissed as moot when plaintiffs sold one of their two cars and thus became eligible for ANFC benefits.[2] That decision was subsequently reversed by the United States Court of Appeals for the Second Circuit, and remanded to this Court for further proceedings, *Begins v. Philbrook*, 513 F.2d 19 (2d Cir. 1975). On May 1, 1975 plaintiffs filed a new complaint adding intervening plaintiffs John and Geraldine Dizazzo. Robert M. Wimble and Judith Wimble moved to intervene on May 9, 1975, and the motions of both pairs of intervenors were granted on June 2, 1975.

The case was then subject to two stays to await developments in the administrative process and in litigation elsewhere which involved potentially controlling issues of law. The first stay was granted pursuant to a stipulation of the parties on June 12, 1975 in order to give the State time to amend the regulation to comply with new federal regulations. The second stay was granted on September 16, 1975 because the federal regulations which prompted the first stay were themselves stayed pending a decision in a case heard by the United States Court of Appeals for the District of Columbia Circuit. The decision in that case was rendered on February 20, 1976, *National Welfare Rights Organization v. Mathews*, 174 U.S.App.D.C. 410, 533 F.2d 637 (1976).

Thereafter, Gerald and Lorraine Longey moved to intervene, and plaintiffs moved for class action certification. Both motions were subsequently granted. The class which was certified includes all present and future applicants for or recipients of ANFC benefits whose benefits would be denied pursuant to Section 2263.4 of the Vermont Welfare Assistance Manual because of their ownership of more than one motor vehicle. Following the certification of the class, the parties stipulated that Robert and Patricia Begins, John and Geraldine Dizazzo, and Robert and Judith Wimble be dismissed as parties because they were no longer receiving assistance from the Vermont Department of Social Welfare.

In late 1976 the parties entered into several stipulations, the last of which provided that plaintiffs withdrew their request for injunctive relief and that defendant would be bound by any declaratory relief rendered by this Court pursuant to 28 U.S.C. §§ 2201 and 2202 as if an injunction had been issued. The parties filed cross-motions for summary judgment which form the basis for the final decision on the merits.

The remaining named plaintiffs, Gerald and Lorraine Longey, have two children and were receiving ANFC–Unemployed Fathers benefits when the defendant endeavored to terminate such assistance because the Longeys owned two automobiles. The automobiles which gave rise to this violation of section 2263.4 were a 1966 Dodge owned by the Longeys and worth approximately $100, and a 1974 AMC Hornet with a value of $2400. Plaintiffs' equity in the Hornet was only about $130 because they still owed about $2270 for that automobile. Mr. Longey, a seasonally self-employed oil burner serviceman earning about $3,000 per year, uses his Dodge to transport himself and his tools to work and for personal business. Mrs. Longey, who is employed one day per week, uses the Hornet to commute to work. The Hornet also serves as the family car. Mrs. Longey's monthly wages are about $90 and the monthly payments on the Hornet are $100.

1. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3).

2. *Begins v. Philbrook*, Civil No. 74–43 (D.Vt. July 19, 1974).

Regulation 2263.4 of the Vermont Welfare Assistance Manual,[3] known as the "two-car" regulation, simply provides that ownership of more than one automobile by members of an "assistance group"—usually a family—disqualifies that group from ANFC benefits. The language which gives rise to this litigation is clear and concise:

> One automobile per assistance group, regardless of its value, shall be excluded from consideration within the limitation on combined resources. Ownership of more than one automobile by members of an assistance group shall disqualify the group . . ..

The only exception to this one-car limitation provides that automobiles which qualify as "income producing property" shall be separately considered under provisions applicable to such property.

Plaintiffs argue not only that the disqualification for ownership of more than one

automobile offends the Equal Protection and Due Process Clauses of the United States Constitution, but that it is also inconsistent with federal statutes and regulations because it does not require that the actual value of the car to the plaintiff be considered in determining need. Because we agree that the regulation is inconsistent with the federal statutes and regulations, we do not consider plaintiffs' constitutional claims, and intimate no views thereon.

42 U.S.C. § 602(a)(10) provides that "aid to families with dependent children shall . . . be furnished with reasonable promptness to all eligible individuals." A "dependent child" is defined in 42 U.S.C. § 606(a) as a "needy child" who is living with certain specified family members and who has been deprived of parental support in a number of specified ways.[4] It is uncontested that plaintiffs' children meet all the eligibility criteria set forth in § 606(a).

---

3. Regulation 2263.4 reads in full:

An automobile is defined as any passenger car, truck or jeep, registered or unregistered that is in intact condition, stored, or on blocks. An intact vehicle includes all major operating parts, such as engine, transmission, wheels, steering mechanism, etc.

A non-operable automobile minus operating parts is considered junk and thus does not come within the definition of automobile; however, the salvage value of a junked automobile may represent a substantial resource requiring individual evaluation.

One automobile per assistance group, regardless of its value, shall be excluded from consideration within the limitation on combined resources. Ownership of more than one automobile by members of an assistance group shall disqualify the group except as follows:

1. Additional automobile(s) which qualify as "income producing property" shall be considered under the provisions applicable to such property (see Income Producing Property).
2. Additional automobile(s) which would qualify as "income producing property," except that the assistance group member is not presently operating the vehicle because he is incapacitated or disabled, shall be considered under the provisions applicable to such property, provided that:
   a. The grant of public assistance is based on the incapacity or disability of the assistance group member making use of the vehicle; and

b. The vehicle was used to produce income immediately preceding the onset of incapacity or disability; and
c. The individual will more probably than not require the vehicle to produce income at the end of the period of incapacity or disability; and
d. The duration of incapacity or disability is not expected to exceed one year.

When an applicant indicates willingness to sell additional vehicles which would otherwise disqualify an assistance group, and all other eligibility conditions are met, assistance may be granted provisionally, for a period not to exceed 60 days, pending disposition of such additional automobiles. If sale is not completed within 60 days, assistance shall be terminated. (See also Application Decisions—Money Grant.)

When assistance has been granted under the provisions for considering an additional "income producing" vehicle during incapacity of its operator, actual use to produce income shall be resumed at the end of 12 months. If, at the end of 12 months, it is not possible to use such vehicle(s) to produce income, the vehicle(s) must be sold within 60 days, in order to qualify for continued assistance.

Vermont Welfare Assistance Manual, Section 2263.4.

4. 42 U.S.C. § 606(a) reads as follows:

When used in this part—

(a) The term "dependent child" means a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical

The defendant, however, would deny aid to families of otherwise eligible needy children on the grounds that the family's ownership of a second automobile, in and of itself, renders the family insufficiently needy to qualify them for ANFC aid.

Plaintiffs argue in essence that the mere ownership by a member of the child's family of a second car of indeterminate worth (in the Longeys case, as we have noted, the second car is worth approximately $100) simply cannot rationally constitute the difference between a "needy" child and the one who is not "needy." As plaintiffs acknowledge, 42 U.S.C. § 602(a)(7) requires state agencies, in determining need, to take into consideration "any other income and resources of any child or relative claiming aid . . .." However, federal regulations provide that only "currently available" resources be considered, 45 C.F.R. § 233.20(a)(3)(ii)(D), that all resources be "reasonably evaluated," 45 C.F.R. § 233.-20(a)(3)(ii)(E), and that the determination of need be made "on an objective and equitable basis," 45 C.F.R. § 233.20(a)(1). The "two-car" regulation, according to plaintiffs, violates all of the federal standards.

■ At the outset, there can be no dispute that a state welfare regulation imposing conditions on eligibility for ANFC aid which conflicts with federal welfare statutes and regulations is invalid under the Supremacy Clause of the United States Constitution, *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct.

502, 30 L.Ed.2d 448 (1971); *Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972). The question, of course, is whether the "two-car" regulation promulgated by the Vermont Department of Social Welfare does impose additional conditions on eligibility which render it invalid.

The crux of the state's defense of the "two-car" regulation is that "the ownership of an additional automobile is closely related to need."[5] But the defendant seems to argue that the second automobile is both an asset and a liability. He contends that the language of 45 C.F.R. § 233.20(a)(3)(i) lends support to this interpretation because it refers to "home, personal effects, automobile and income producing property . . . . "[6] among the property that may be retained to meet current and future needs while receiving assistance. According to defendant, the use of the singular "automobile" should be read to suggest that the state has authority to limit a household to one automobile, if it chooses to do so. It is somewhat ironic, then, that defendant also argues strenuously in another portion of his memorandum that the continued ownership of additional automobiles *increases* the plaintiffs' needs by giving rise to additional maintenance and operation expenses.

Plaintiffs point out, however, that courts have fairly uniformly struck down eligibility requirements which were not based on need or dependency on the ground that they violated the Supremacy Clause of the Constitution. *See Doe v. Swank*, 332 F.Supp.

---

or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment . . ..

**5.** Defendant's Memorandum of Law in Support of Motion for Summary Judgment, at 9.

**6.** 45 C.F.R. § 233.20(a)(3)(i) provides that a State plan for OAA, AFDC, AB, APTD or AABD must

(i) Specify the amount and types of real and personal property, including liquid assets, that may be reserved, i. e., retained to meet the current and future needs while assistance is received on a continuing basis. In addition to the home, personal effects, automobile and income producing property allowed by the agency, the amount of real and personal property, including liquid assets, that can be reserved for each individual recipient shall not be in excess of two thousand dollars. Policies may allow reasonable proportions of income from businesses or farms to be used to increase capital assets, so that income may be increased.

61, 63 (N.D.Ill.) (three-judge court) (per curiam), aff'd sub nom. *Weaver v. Doe*, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1971); *Doe v. Shapiro*, 302 F.Supp. 761 (D.Conn.1969) (three-judge court), *appeal dismissed*, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677, *reh. denied*, 397 U.S. 970, 90 S.Ct. 991, 25 L.Ed.2d 264 (1970); *Meyers v. Juras*, 327 F.Supp. 759, 762 (D.Ore.) (three-judge court), *aff'd*, 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed.2d 39, *reh. denied*, 404 U.S. 961, 92 S.Ct. 308, 30 L.Ed.2d 280 (1971). These cases all involve state regulations for which there was a more or less rational basis but which simply did not comport with the federal law regarding public assistance eligibility. To some degree they all rely upon the holding of the Supreme Court in *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), that a regulation which places conditions on eligibility which are unrelated to need cannot stand. In striking down an Alabama regulation which denied AFDC payments to children of a mother who cohabited with any single or married able-bodied man, the Supreme Court in *King* relied heavily on the fact that the relevant concern of the state in determining need was whether the "substitute father" was *in fact* contributing to the needy child, not whether he simply fit the state's definition of a substitute father by cohabiting with the child's mother.

The other cases relied upon by plaintiffs support the same basic proposition in the context of widely divergent state regulations.

> Eligibility for aid under the Social Security Act of 1935 is conditioned upon two factors. A child must be both needy and dependent. No other conditions of eligibility are required.

*Doe v. Swank, supra*, 332 F.Supp. at 63 (N.D.Ill.) (three-judge court), *aff'd*, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1971); *see Doe v. Shapiro, supra*, at 767; *Meyers v. Juras, supra*, at 762.

Furthermore, the requirements that the resources to be considered in determining need must be currently "available" and that such determination be made on an objective and equitable basis have led to the invalidation of other state regulations regarding eligibility. See *Wilczynski v. Harder*, 323 F.Supp. 509, 517 (D.Conn.1971) (three-judge court); *Marotti v. White*, 342 F.Supp. 823, 827 (D.Conn.1972) (three-judge court). Clearly, an automobile in which a family has $130 worth of equity is at most only a currently available resource to the extent of $130. To place a meaningful value on currently available resources, the defendant cannot avoid the very real impact of encumbrances on the property. "Valuing resources without regard to encumbrances violates the cardinal principal of AFDC that only resources *actually available* may be counted in determining whether the recipient is within the state's definition of a standard of need." *National Welfare Rights Organization v. Mathews*, 174 U.S. App.D.C. 410, 533 F.2d 637, 649 (1976) (emphasis added). Similarly, it is hardly equitable or objective to deprive one child of aid because his family owns an asset of little value while granting aid to another child whose family has greater assets which are in an even more liquid form, and hence, more readily available.

In applying the principles of the federal statutes and regulations to the present case, the Vermont "two-car" regulation is perhaps less objectionable than the regulation in the *King* case, but it still suffers the same basic defect. First of all, as we have noted, it is supported here by two contradictory rationales: (1) that an additional automobile is the source of additional expenses which increase the family's need and its dependence on welfare, and (2) that an additional automobile is an excess resource which makes the family less needy and ineligible for assistance. In fact, of course, the additional automobile may fit either one of those descriptions or neither of them, depending on its age, condition, economy of operation, and the extent of any encumbrances upon it. Under either theory, defendant oversimplifies the economic impact of a second car on a welfare family and considers only the potentially negative aspects thereof. Furthermore, it is obvious that the relationship between a child's need and his family's ownership of a car valued at $100 or the family's $130 equity in a $2400 car is virtually nonexistent.

■ As pointed out by plaintiffs, regulations of this type which consider neither the value of the automobile nor the extent of the welfare recipient's equity in the automobile, whatever their merits, have one common flaw: they result in denials of benefits to eligible individuals without reference to actual need. *See National Welfare Rights Organization v. Mathews, supra; Smithson v. Flowers*, Civ. No. 74–18CH (S.D.W.Va. April 8, 1974). This result is clearly repugnant to both the statutory and regulatory scheme upon which the AFDC program is based.

■ We therefore order, adjudge and declare that § 2263.4 of the Vermont Welfare Assistance Manual, the "two-car" regulation, is invalid under the Supremacy Clause of Article VI of the United States Constitution because it conflicts with federal statutes and regulations governing the criteria of eligibility for welfare assistance. Plaintiffs' motion for summary judgment is hereby granted and the defendant's motion for summary judgment is denied.